**C/M**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHAWNTA ARMANI BREWER, Plaintiff, | : | **MEMORANDUM DECISION AND ORDER** |
| - against - | : | 25-cv-6883 (BMC) |
| COMMISSIONER OF SOCIAL SECURITY, Defendant. | : | |

**COGAN**, District Judge.

Plaintiff *pro se* seeks review of a decision by the Commissioner of Social Security, following a hearing before an Administrate Law Judge, that she is not disabled for the purpose of qualifying for supplemental security income under Title XVI of the Social Security Act. The ALJ found that she had a severe impairment of status post gunshot wound to her lower right leg, but notwithstanding that, she retained sufficient residual functional capacity to perform a full range of medium work (which includes light work and sedentary work), excluding jobs that require frequent operation of foot controls; frequent climbing of stairs/ramps and balancing; more than occasional climbing of ladders, scaffolds, or ropes; or frequent exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle. Finding that there are a substantial number of jobs for her in the national economy that fit those parameters based on testimony from a vocational expert, the ALJ found her not disabled, and the Appeals Council affirmed her decision.

**BACKGROUND**

Plaintiff's description of her problem, both in her application for benefits and in her testimony before the ALJ, was quite severe, far beyond what the ALJ found. She testified that

she was unable to work or perform daily activities due to residual pain and bone callouses. After the shooting, some bullet fragments remained in her leg. She was unable to stand in the shower for more than 10 minutes, and she couldn't sit for too long because she would "start to get pain" and her leg would become "weary."

The problem plaintiff has, as many *pro se* litigants in these social security review proceedings have, is that beyond her subjective complaints about pain, there is little to no objective evidence, *i.e.*, medical records or opinions, to support a finding of impairments that are severe enough to meet the definition of disability as qualified by the ALJ. To the contrary, her visits with doctors are few and far between, and the records for those visits are largely normal.

**I. Treatment Records Reviewed by the ALJ**

Starting with an overview of her treatment, she was shot on March 6, 2022 and discharged a few days later. She sought no other medical attention until the following July, when some bullet fragments were removed. She saw no other doctor until the following November, and that may not have been directly related to her leg – she was taken by ambulance to the emergency room for acting erratically (maybe that was the result of sepsis from unremoved bullet fragments, but nothing in the record says so), and more fragments were removed a couple of days later. She then didn't see another doctor until March of 2023, when she complained about being "exhausted" and "seeing stars." But her examination was normal – muscle tone, range of motion, strength in all muscle groups, neurological functioning, and leg testing. She was referred to physical therapy, which she didn't attend, purportedly because of "insurance issues."

Her next doctor visit was in May 2023, where she complained of right leg pain in the degree of 4 or 5 out of 10. She was ambulatory, had no new trauma or injury, and showed no signs of infection. She denied numbness, paresthesia, back pain, weakness, sensory deficits, or

issues with her gait. Her right calve was symmetrical, nontender, and not visibly swollen or red compared to her left.

The following month (June 2023) she saw a Nurse Practitioner for leg pain and blamed bullet fragments for sepsis, which caused her to have intermittent severe pain and sudden bouts of falling asleep. The NP diagnosed pain in her lower right leg and prescribed ibuprofen, consultation with a vascular specialist, an orthopedist, and physical therapy. She saw a vascular therapist within a week. The vascular therapist found venous insufficiency, which he recommended treating conservatively with compression and physical therapy.

Plaintiff had a consultative physical examination with an SSI consultant less than a week after that (June 16, 2023) and reported difficulty standing or walking long periods without reaching a 10/10 on the pain scale. At that time, she was living in a homeless shelter, and her activities consisted of watching television and using social media. The consultant's observations were a "somewhat abnormal" gait, slow heel and toe walking "with difficulty", but no problem getting on or off the exam table or rising from a chair. She had full range of motion throughout her arms, legs, and spine, and no reflex, strength, sensory deficits, edema, or significant varicosities. His conclusion was that she may have a mild limitation in heavy lifting, carrying, prolonged standing and walking, and using foot controls.

Her next visit related to her leg was more than a year later to a hospital emergency room. She said she was having fever, nausea, light-headedness with syncope, and she believed all that to be related to her gunshot wound. The ER doctor examined her and found slight swelling in her left leg compared to the right, but all other functions – strength, range of motion, and nerve functioning – were all normal. Blood tests ruled out deep vein thrombosis or infection. She was

referred to a general surgeon to discuss more fragment removal, but there is no indication that she ever pursued that.

A few months later, she went to another emergency room, complaining of a lump on her right leg and intermittent 10/10 pain. But the doctor noted that she was walking with a steady gait. She had some abdominal tenderness, and some indication of deep vein thrombosis, although she was negative for acute pathology.

## II. Administrative Findings

These records-only reviews were even less consistent with a finding of disability than the medical records. One state agency consultant found that plaintiff could do medium work with frequent changes in posture and avoiding workplace hazards. The other found that he could not evaluate her records because she had failed to cooperate with requests for additional evidence.

## III. ALJ's Consultant

The ALJ sent an interrogatory to an impartial orthopedist, asking him to review the medical records and complete questionnaires regarding plaintiff's ability to work. Based on his review of the records, he opined with a medium level work description – plaintiff could occasionally lift and carry up to 50 pounds; continuously lift and carry up to 20 pounds; sit for eight hours; stand and walk for four hours each (eight hours total); occasionally climb ladders or scaffolds; frequently climb stairs/ramps and balance; frequently operate foot controls with her right foot (continuously with the left); and continuously perform all other manipulative and postural activities.

## IV. Post-Decisional Evidence

After the ALJ found plaintiff to be not disabled, plaintiff submitted three additional pieces of evidence. Only two are potentially relevant. One was from a neurologist in August 2025, to whom plaintiff complained of lower back pain that radiated to her right leg. The

neurologist found diminished sensation to light touch in her back and reduced lumbar range of motion, tenderness, and a positive range of motion and positive straight-leg raise test on each leg. He also found normal muscle tone and strength, normal coordination, normal balance and gait, and an ability to perform heal-to-toe and tandem walking without favoring either leg. The other record she submitted post-decision was a CT-scan from that same period, which showed she still had multiple bullet fragments in her leg, but no misalignment, bone involvement, or suspicious lesions, and her muscles and joints were grossly normal.

The Appeals Council determined that this evidence would not have changed the ALJ's decision.

## DISCUSSION

### I. The ALJ's Decision

In reviewing the decision of an ALJ that plaintiff is not "disabled" as that term is defined under the Social Security Act, it is not my task, nor am I even permitted, to determine whether plaintiff meets the statutory definition of disability. My review is much narrower than that. Rather, the only question that I am allowed to ask is whether the record contains "substantial evidence" to support the ALJ's decision. See 42 U.S.C. § 405(g) ("The Findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); Richardson v. Perales, 402 U.S. 389, 390 (1971). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)).

The description of the evidence set forth above is more than substantial to affirm the ALJ. All three medical experts who assessed plaintiff's ability to function agreed that she was not as impaired as she claimed and that she could perform medium work. Their agreement alone is

weighty, but it is backed up by the showings during multiple examinations of no impact on her strength, range of motion, or, at least most of the time, her gait. No one opined that her venous incompetence should be treated surgically or that she even had to use an assistive device to ambulate – all that was prescribed was compression socks and Advil. Plaintiff's self-serving testimony just doesn't hold up when measured against the evidence of record. And even if the ALJ was wrong about medium work, plaintiff still would not be disabled because she could perform light or sedentary work. See 20 C.F.R. § 416.967(c).

**II. The Appeals Council Decision**

When the Appeals Council considers evidence after the ALJ issues a decision, it will grant review if the evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). The Second Circuit holds that evidence submitted to the Appeals Council becomes part of the administrative record that courts review in determining whether the Commissioner's final decision is supported by substantial evidence. See Perez v. Chater, 77 F.3d 41, 44-46 (2d Cir. 1996).

The Appeals Council did not err with the "new" evidence that plaintiff submitted. The only new symptom was diminished sensation to light touch and related conditions, which is inconsistent with the three physicians upon whom the ALJ relied. But because this pertained to a period following the ALJ's decision, it shows, at most, that maybe plaintiff became worse after the decision. If plaintiff did in fact become worse after the ALJ's decision, she may be able to file a new disability application with a later onset date, as the ALJ suggested she could. But the record regarding this application suggests that the "new" evidence was consistent with the prior evidence to the extent that it showed continued strength, coordination, balance, and gait, with no favoring of either leg.

At bottom, plaintiff's argument is that her description of her pain should be accepted, and the medical evidence disregarded. The ALJ and the Appeals Council did not have to do that. I cannot find a lack of substantial evidence to support the decision of the Commissioner.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted, and the case is dismissed. The Clerk shall enter judgment, closing this case.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
October 7, 2026